# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Charlie Lewis,                                    Civil No. 13-2768 PJS/JJK

                Petitioner,

v.                                                **REPORT AND**
                                                 **RECOMMENDATION**

Warden Michelle Smith,

                Respondent.

Charlie Lewis, #227047, 970 Pickett Street No., Bayport, MN 55003, *Pro Se*;

Linda M. Freyer, Hennepin County Attorney's Office, counsel for Respondent.

## I.  BACKGROUND

    In May 2012, Petitioner was convicted of Criminal Sexual Conduct in the First Degree in violation of Minn. Stat. § 609.342, subd. 1(e)(i) after a jury trial in Hennepin County District Court.  He was sentenced to a 240-month prison term, an upward departure from the 146-month presumptive guidelines sentence, based on the jury's finding of multiple forms of penetration of the rape victim. The Minnesota Court of Appeals affirmed Petitioner's conviction and sentence. *State v. Lewis*, Henn. Cty. Dist. Ct. No. 27-CR-10-7607, 2013 WL 3368431, at *1–3 (Minn. App. July 8, 2013) (unpublished opinion).  The Minnesota Supreme Court denied review on September 17, 2013.

The Minnesota Court of Appeals set forth a detailed summary of the facts of the case in its opinion.  *Id.*  On July 22, 2004, a young woman identified as M.L. was raped at a Minneapolis park.  After the attack, M.L., who suffered from mental illness, ran into a nearby street where she was assisted by a passing motorist who took M.L. to a police station.  M.L. was nude from the waist down and not wearing shoes.  She gave a description of her assailant to the police and, when they searched the scene of the crime, they found M.L.'s pants, shoes, underwear, and a bag containing her identification.  M.L. was taken to a hospital where she consented to a sexual assault examination.  The exam revealed vaginal tearing and exterior abrasions consistent with a sexual assault, and DNA samples were collected.

The case went cold until five years later, in 2009, when the Hennepin County Sheriff's office reopened it and compared the DNA of M.L.'s sexual assault exam against a DNA database.  The comparison matched the DNA between M.L.'s assailant and Petitioner.  A new DNA sample taken from Petitioner confirmed the match, and Petitioner was charged with two counts of first-degree sexual assault.

Before trial Petitioner moved to exclude the DNA evidence.  Petitioner argued that the DNA evidence was unreliable because of discrepancies in the date of birth of the rape victim listed on various documents.  For example, police reports listed the date of birth of M.L. as 3/4/1977.  Medical records prepared at

2

Hennepin County Medical Center when the rape kit was put together, including the vaginal swab collecting DNA, show M.L.'s date of birth as 3/5/1977.  In a taped interview with a police investigator in 2010, M.L. said that her birth date was March 5, 1975.  The Hennepin County Sheriff's office crime laboratory examination reports, including the report of the extraction of male DNA from the semen in the sexual assault collection kit, the report of the match to the DNA of Petitioner from the COD's convicted offender database, and the report of the match to the DNA from the buccal sample taken from Petitioner, listed M.L.'s date of birth as 3/4/77.  (Doc. No. 1-1, p. 40-46.)[1]

Before trial, Petitioner moved to suppress the DNA evidence arguing that it was unreliable because of these inconsistencies in the alleged rape victim's date of birth.  He contended that failing to suppress the evidence would violate his Sixth Amendment right of confrontation because the true identity of the victim was unknown.  Petitioner also argued that M.L. should have been required to submit to DNA testing to verify that she was the actual victim of the alleged assault.  The court concluded, however, that the inconsistencies stemmed from a typographical error, combined with the fact that M.L. spoke with an accent and was interviewed close in time to the assault.  The trial court denied Petitioner's motion to suppress the DNA evidence and to dismiss the case.

---

[1]  Petition Exhibits.

At trial, the State introduced evidence that Petitioner committed another sexual assault against another individual in 2007, three years after the rape of M.L.  The victim of the 2007 assault testified that Petitioner befriended her outside of a homeless shelter and that, when she spurned his advances, he hit her on the head and then vaginally penetrated her without wearing a condom after removing her clothing, just as he was accused of having done with M.L.

Before the introduction of the evidence of the 2007 assault, the trial court informed the jury that it could not use the 2007 incident to convict Lewis of the 2004 assault and that this evidence was not to be used as proof of the Defendant's character.  It was admitted for the limited purpose of assisting the jury in deciding whether Petitioner committed the acts against M.L. as evidence of his course of conduct.

Following the jury's verdict finding Petitioner guilty of one count of first-degree criminal sexual conduct, the jury answered special interrogatories finding that multiple forms of penetration had occurred.  In sentencing, the court departed upward and sentenced Petitioner to 240 months' imprisonment followed by five years of supervised release.

In this federal habeas petition, Petitioner states seven grounds on which he claims he is being held in state custody in violation of his federal rights:  (1) the Minnesota state district court erred in admitting *Spreigl* or other-act evidence, that is, the court erred in allowing a *Spreigl* witness to testify at trial about the

2007 rape (Pet. at 6); (2) Petitioner made "oral motion to have case dismissed, and inform Judge that lawyer Arthur Martinez refuse to file motion that defendant request (sic)" (Pet. at 8); (3) the Minnesota state district court erred in not granting Petitioner's motion for a DNA test of "[M.L.] D.O.B. 3-4-77" (Pet. at 9); (4) Petitioner was charged in Minnesota state district court with a crime against a person with "D.O.B. 3-5-77" but the M.L. interviewed by police told police her "D.O.B. 3-5-75" (Pet. at 11); (5) the upward departure that Minnesota state district court ordered at sentencing was based on multiple penetrations but Petitioner was not charged with multiple penetrations (Pet. at A-B); (6) Petitioner did not receive discovery of a DNA chain of custody report of M.L. with date of birth 3-4-77 despite complaints to Minnesota state district court regarding discovery (Pet. at A-C); and (7) Petitioner's lawyers in Minnesota state district court were ineffective for not having DNA testing done despite Petitioner's requests for the testing (Pet. at A-D).

## II. STANDARD OF REVIEW

Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Anti–Terrorism and Effective Death Penalty Act ("AEDPA") limits habeas review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established federal law,
> as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d)(1)–(2).

The United States Supreme Court explained the meanings of the "contrary to" and "unreasonable application" clauses in *Williams v. Taylor*, 529 U.S. 362 (2000).  A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts."  *Id.* at 412–13.  A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'"  *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005) (quoting *Williams*, 529 U.S. at 411).

A writ of habeas corpus may be available under Section § 2254(d)(2) where the state court's resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." In other words, habeas relief can be granted if the conviction is based on findings of fact that are not reasonably

6

supported by the evidentiary record.  When reviewing a state court decision, however, a federal court presumes the state court's factual determinations are correct unless the petitioner presents clear and convincing evidence to the contrary.  *Perry v. Kemna*, 356 F.3d 880, 884 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)), *cert. denied*, 543 U.S. 1022 (2004).  *See also Evenstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006) ("A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. 28 U.S.C § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. 28 U.S.C § 2254(e)(1).").

Claims based on state court interpretations of state law are not subject to habeas review.   "[F]ederal habeas corpus relief does not lie for errors of state law … [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  As the Court of Appeals for the Eighth Circuit explained in *Evenstad*, 470 F.3d at 782–83:

> [Federal courts] lack authority to review [state court] interpretations of state law.…  Therefore, it is not enough for [petitioner] to argue the Minnesota state courts misapplied state law.  To obtain habeas relief, [petitioner] must be able to point to the Supreme Court precedent he thinks the Minnesota state courts acted contrary to or applied unreasonably.

*See also Turnage v. Fabian*, 606 F.3d 933, 942 (8th Cir. 2010) (citing

*Evenstad v. Carlson* and declining to review a habeas petitioner's claims

regarding state court interpretation and application of state law).

## III.  ANALYSIS

### A.  First Ground for Relief:  Admission of *Spreigl* Evidence

In this first ground of relief, Petitioner contends that the trial court erred by

admitting into evidence the testimony of the witness who said that Petitioner

raped her in 2007.  The Minnesota Court of Appeals, however, found that the

admission of this testimony regarding Petitioner's 2007 conduct satisfied the

standard of admission of *Spreigl* evidence in a state criminal trial.  *State v.*

*Spreigl*, 272 Minn. 488 (Minn. 1965).  It concluded that there was no error in the

district court's determination that "the 2004 and 2007 sexual assaults bore

sufficient similarities to establish a common scheme."  *State v. Lewis*, 2013 WL

3368431, at * 5.

> Given the deferential standard of review, we cannot conclude
> that the district court abused its discretion when it determined
> that the similarities of the 2004 and 2007 sexual assaults bore
> sufficient similarities to establish a common scheme.  Lewis, by
> questioning the recollections of M.L., established the relevance
> of the 2007 incident and the district court accepted the
> proposed similarities as establishing a common scheme or
> plan.  We do not find such reasoning arbitrary or capricious
> and are bound by the district court's conclusion that the
> evidence was admissible.  *See Kroning,* 567 N.W.2d at 46.
> Because we conclude that the district court did not err by
> admitting the *Spreigl* evidence, we need not address whether the
> evidence was prejudicial.  *See Fardan,* 773 N.W.2d at 320; *State*

*v. Bolte,* 530 N.W.2d 191, 198 (Minn. 1995) (holding that despite dissimilar nature of the *Spreigl* act, defendant could not demonstrate prejudice to warrant a new trial).

The state district court and appellate court rulings regarding the admission of this *Spreigl* evidence did not run contrary to, or involve an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Nor were these decisions "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2).

Petitioner cites no federal law in his habeas petition to support this claim. Even if we assume that Petitioner is attempting to raise a claim that his constitutional right to a fair trial was violated, there is no clearly established federal law, as determined by the Supreme Court of the United States, that says that the admission of past-conduct evidence of this sort violates a constitutional right to a fair trial.  To the extent that Petitioner's claim is based on the claim that the Minnesota court incorrectly applied *Spriegl*, it is well established that "[f]ederal habeas corpus relief does not lie for errors of state law . . . [and] it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions."  *Estelle v. McGuire*, 502 U.S. at 67-68.  Petitioner is not entitled to federal habeas review of and relief on his claim concerning the admission of the *Spreigl* evidence.

### B. Second, Third, and Fourth Grounds for Relief: DNA Evidence and Multiple "M.L.s"

Petitioner's complaint about the admission of DNA evidence at his trial is tied to his claim that he was wrongfully convicted in a case of mistaken identity. This does not, however, appear to be a typical sort of mistaken identity problem where a defendant claims that the police got the wrong man. Here, the Petitioner complains that the wrong victim showed up in court, and he argues that as a result, he did not have an opportunity to confront the person designated M.L. who reported the rape in 2004.

Petitioner argues that the trial court should not have admitted the DNA tests that matched Petitioner's sample to the DNA extracted from the rape kit sample. Petitioner does not appear to be contesting the fact that there was a match between the male DNA extracted from the rape kit and his DNA. Indeed, in his state court appeal Petitioner argued that the *Spreigl* other misconduct evidence did not need to be admitted into evidence for the state to prove its case because "two different DNA test results concluded it was Lewis's sperm on the vaginal swabs obtained during ML's sexual assault examination." (Doc. No. 1-1 at 20.)[2] Rather, he says that the rape kit sample may not have come from the

---

[2] The forensic biologist for the Sheriff's crime lab who compared Petitioner's DNA sample to the DNA extracted from the semen on M.L.'s vaginal swab testified at trial that according to her statistical extrapolations, Petitioner's DNA profile would
(Footnote Continued on Next Page)

person who appeared at trial who was designated by the prosecution as the M.L. who was raped in 2004.

Petitioner pursued his mistaken identity theory at trial by calling a forensic scientist who testified that the sexual assault report in 2004 showed M.L.'s birthdate as March 5, 1977, but the label on the sample the state crime lab received showed M.L.'s birthdate as March 4, 1977, thus raising the possibility of inaccurate conclusions about a DNA match based on documentation errors.  And Petitioner argued that there were other discrepancies.  For example, the criminal report taken at the police station on the day of the rape lists M.L.'s date of birth as 3/4/77, but in a tape recorded interview in 2010, after the cold case was reopened, M.L. said her date of birth was March 5, 1975.  The identification card that the police found at the site of the rape where they also found M.L.'s clothing listed her date of birth as March 5, 1977.  Petitioner also says that there are differences in the recorded height of M.L., with some documents listing it as 5'4" and others listing it as 5'1".  And he also claims that there are such significant

_____

(Footnote Continued from Previous Page)

not be expected to occur more than once among unrelated individuals in the world's population.  (Doc. No. 1-1 at 11-12.)

differences in various photographs of M.L. that there is doubt whether they are all the photos of the same person.

What this all boils down to is Petitioner's contention that in 2009 the crime lab matched Petitioner's DNA to DNA from a swab taken from a person named M.L. who was born on a different date than the M.L. who reported the rape, and from whom a vaginal swab was taken, in April 2004.  Petitioner contends that his constitutional rights were violated because the trial court did not suppress the DNA evidence or require that M.L. submit to DNA testing to verify she was the actual victim of the alleged assault.  As he did in his pro se brief to the Minnesota Court of Appeals, Petitioner argues that his Sixth Amendment right to confrontation was violated because true identity of the victim of the alleged rape in 2004 was unknown, and that he was convicted by the use of "false evidence" in violation of the Fourteenth Amendment.

The state trial court made a factual determination, supported by the evidence, that the discrepancies cited by the Petitioner were not sufficient to permit the conclusion that there was a mistaken identity.  The trial court explained the support in the record for its decision:

> During her many interviews with police and medical personnel, the victim identified the assailant as a black male, about 6 feet tall that wore glasses. The Defendant meets this physical description.
>
> The Defendant argues that the police reports all listed the victim's date of birth as 3/4/1977.  Additionally, the victim may have stated during an interview that she was born in 1975.

These discrepancies are not substantially different from what has been determined to be the victim's correct date of birth. This makes it very likely that an error in recording the correct date lead [sic] to all police reports being incorrect. The police later finding the victim's ID card in her backpack with the correct date of birth provides further proof that it was merely recorded incorrectly in an initial police report.

(Order and memorandum by Hon. Allen Olesisky, Hennepin County District Court, October 31, 2011); *State v. Lewis*, 2013 WL 3368431, at *2, *6.

In upholding this determination, the Minnesota Court of Appeals reasoned as follows:

The district court determined that the date of birth discrepancy stemmed from a typographical error, combined with the closeness of M.L.'s injury to the trauma of the attack. The district court also reasoned that M.L.'s accent exacerbated the likelihood of a transcription error. Such a conclusion was well within the district court's discretion. *See Kroning,* 567 N.W.2d at 45-46. Regarding probable cause, the district court considered the facts submitted and noted that DNA evidence directly linked Lewis to the crime and that Lewis matched the physical description provided by the victim. The district court's conclusion that this evidence gave rise to a probability that Lewis was guilty of the alleged offense was sound.

*State v. Lewis*, at *6.

When reviewing a state court decision in a federal habeas action, the federal court presumes the state court's factual determinations are correct unless the petitioner presents clear and convincing evidence to the contrary. *Perry v. Kemna*, 356 F.3d 880, 883 (8th Cir. 2004). In this case, the Minnesota courts did not make an unreasonable determination about the facts concerning the DNA

evidence and M.L.'s identity.  The state court's determinations on this issue were

reasonably supported by the record, as explained by the trial court and the Court

of Appeals, and do not warrant habeas corpus relief.[3]

### C.  Fifth Ground for Relief: Defendant Was Not Given Notice that the Prosecution Was Seeking Upward Departure

In his fifth ground for relief, Petitioner contends that he was given an

upward departure to his sentence for multiple penetrations despite the fact that

he was never charged with multiple penetrations.  Petitioner states that this

violates his "constitutional rights," but does not specify which rights.

Addressing this claim, the Court of Appeals stated:

> The record does not support Lewis's contention. The state filed
> notice of its intent on August 26, 2011, and explained that it sought
> an upward departure due to the vulnerable nature of the victim and
> the alleged multiple penetrations of the attack. Even if Lewis did not
> receive or carefully review this notice, he explicitly acknowledged the
> state's request to seek an upward departure on the record through
> his own attorney . . . Lewis's argument that he was uninformed of the
> potential upward departure is unavailing and unsupported.
> Therefore, he is not entitled to relief on this ground.

This court agrees.  In *Schleeper v. Groose*, 36 F.3d 735, 737 (8th

Cir. 1994), the Eighth Circuit noted that "[i]n § 2254 proceedings, federal

courts are limited to deciding whether a state conviction violated the

---

[3]  Ground Two of the Petition suggests that his lawyer refused to file "motion that
Defendant request."  (Doc. No. 1 at 7).  However, the motion to suppress the
DNA evidence and to dismiss was made, argued, and ruled on by the trial court.
(*See* Doc. No. 9, State's Memorandum, at 22-23.)

federal Constitution or laws. A federal court may not re-examine a state court's interpretation and application of state law." (Citations omitted).

Petitioner does not cite any federal laws that were violated. Even assuming that Petitioner is attempting to make an Eighth Amendment "cruel and unusual punishment" argument, the factual background does not support such a claim. "[J]udges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case." *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000). Petitioner's sentence of 240 months falls well within the statutory maximum of 30 years and, thus, is within the discretion of the trial court. Minn. Stat. § 609.342, subd. 2(a) (2013). Because this court may not, on a habeas petition, reconsider the state court's interpretation of state law, this claim is not a proper ground for habeas relief.

### D. Sixth Ground for Relief: Petitioner Did Not Receive All Discovery

In his sixth ground for relief, Petitioner claims that he did not receive all of the relevant discovery in his case. Specifically, Petitioner contends that he never received the external chain of custody report for the DNA evidence collected from the victim's sexual assault examination. Pet'r's Br. 12–13. Petitioner became aware that this document was missing when the defense's DNA expert brought it to his attention in his expert report.

The Court of Appeals denied relief on this claim, stating that, "[w]ithout a more detailed explanation of the documents that Lewis now contends were unavailable, the record does not support his argument that discovery was flawed." Petitioner includes in his current habeas brief the description of a specific document that was unavailable at trial – the chain of custody log for the DNA evidence. However, the Court of Appeals opinion indicates that he previously had not specifically identified which documents were not produced.

The State of Minnesota's so-called "*Knaffla* bar" prevents Petitioner from raising this claim now in any state petition for post-conviction relief because this claim was one that was known, or could have been known, but was not raised in the district court or the Court of Appeals. Under Minnesota law, when a direct appeal has been taken, "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). Petitioner states in his brief that he has known since his DNA expert prepared his report for trial that the external chain of custody log was missing. (Doc. No. 14, p. 12.) Since this claim was known, but not specifically raised, at the time of his direct appeal, it is barred by *Knaffla* and cannot provide a basis for habeas relief. Because Petitioner has not and cannot exhaust this claim in state court, the claim is

procedurally defaulted.  It cannot provide a basis for habeas relief unless

petitioner can show (1) cause for the default and (2) actual prejudice.

*McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991).  The cause standard

requires a showing that some objective factor external to the defense, such

as interference by officials, impeded efforts to raise the claim in the state

court.  *Id.*  Petitioner fails to make this showing in this case.  And he has

not demonstrated actual prejudice.  The procedural default cannot be

excused and habeas relief should be denied.

### E.  Seventh Ground for Relief: Ineffective Assistance of Counsel

In his final claim for relief, Petitioner argues, as he did in his direct

appeal, that his trial counsel was ineffective.  He cites numerous reasons

why he believes his attorneys were ineffective: that his attorneys did not

properly investigate the case, that they did not contact witnesses upon

Petitioner's request and did not call witnesses to testify at the trial, and that

they were inexperienced in defending a rape case.  More specifically, he

says that his attorneys were ineffective because they did not have the DNA

evidence tested, they failed to call a witness with whom Petitioner was

living at the time of the crime, they failed to question the alleged victim,

and they did not call Petitioner to testify on his own behalf despite his

request to do so.

In reviewing Petitioner's claim that his trial counsel was constitutionally ineffective, the Minnesota Court of Appeals properly noted that the standard for an ineffective assistance claim is quite high:  "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his or her counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the outcome would have been different."  *State v. Lewis*, 2013 WL 3368431, at * 7, (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984)).

Applying this *Strickland* standard, the Minnesota Court of Appeals concluded that Petitioner failed to meet this burden.  To the extent that Petitioner's complaints about trial counsel's performance involved strategic decision-making, such as tactical decision not to pursue a particular theory of defense or a decision not to call a witness or what and how much investigation to pursue, the court concluded that Petitioner could not overcome the strong presumption that counsel's performance fell within a wide range of reasonable assistance.  As to Petitioner's allegations that his trial counsel were unprepared and inexperienced, the court concluded that Petitioner's allegations did not reach the level of proof necessary to show ineffective assistance of counsel, noting that Petitioner provided no evidence or transcript references to establish that his attorney's conduct

fell below that of reasonable assistance.  Addressing Petitioner's claim that his attorney prevented him from testifying on his own behalf, the court said that the trial transcript showed that Petitioner knowingly and voluntarily waived his right to testify.

To prevail on his ineffective assistance claim Petitioner would not only have to demonstrate that counsel's performance was deficient but that he also suffered prejudice from his counsel's performance.  *See Strickland* 466 U.S. at 691, 104 S.Ct. 2062 ("An error by counsel, even if professionally unreasonable does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.")  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 694, 104 S.Ct. 2052.  Petitioner made no showing in his direct appeal, and he makes none in his habeas petition, that the result of the trial would have been different but for counsel's alleged errors.

We conclude that its application of *Strickland* to this case was not an "unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States" by the Minnesota court.  28 U.S.C. § 2254(d)(1).  "'The question is not whether a federal court believes

19

the state court's determination' under the *Strickland* standard 'was

incorrect but whether that determination was unreasonable—a

substantially higher threshold.'" *Knowles v. Mirzayance,* 556 U.S. 111,

123, 129 S.Ct. 1411 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127

S.Ct. 1933 (2007)).  Here, the Minnesota court carefully applied *Strickland*,

as described above, in reaching its conclusion that there was no Sixth

Amendment violation.  *Williams v. Bowersox*, 340 F.3d 667, 672 (8th Cir.

2003).  Petitioner has failed to meet his burden of showing that he is

entitled to habeas relief on his ineffective assistance claim.

## IV.  CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his

petition unless he is granted a Certificate of Appealability, ("COA").  28 U.S.C. §

2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted, unless the petitioner

"has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(3).  To make such a showing, "[t]he petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong."  Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, it is highly unlikely that any other court, including the Eighth Circuit

Court of Appeals, would decide Petitioner's claims any differently than they have been

decided here.  Petitioner has not identified, and the Court cannot independently discern,

anything novel, noteworthy or worrisome about this case that warrants appellate review.

It is therefore recommended that Petitioner should <u>not</u> be granted a COA in this matter.

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings

herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's request for habeas relief should be **DENIED**.

2. The Petition for habeas relief under § 2254 should be **DISMISSED**

   **WITH PREJUDICE.**

3. Petitioner should **NOT** be granted a Certificate of Appealability.


Date: May 13, 2014

*s/Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 27, 2014,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.